THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. RAÚL COURET MARTÍNEZ, Defendant and Appellant.

No. CR-62-160.    Decided September 30, 1963.

*Vicente J. Antonetti* designated by the Supreme Court to assist defendant on appeal. *J. B. Fernández Badillo, Solicitor General,* and *Jenaro Marchand, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The first two errors assigned by appellant to request the reversal of the sentence imposed on him of 10 to 30 years imprisonment in the penitentiary for murder in the second degree are related to (a) the voluntary character of the confessions offered by him during the prosecuting attorney's investigation; and (b) the action of the court in permitting the jury to have, during the deliberations, the written document of his confession. Couret Martínez was prosecuted for having attacked with a stone Leticia Torres, an old lady— she was an octagenarian who lived in the rural area of Yauco—causing her death.

■ 1. The procedure followed by the trial court in relation to the determination of the voluntary character of the confessions offered by defendant—one oral and the other written—strictly conformed to the ruling prevailing in this jurisdiction. *People* v. *Santos,* 87 P.R.R. 593 (1963) ; *People*

v. *Andrades*, 83 P.R.R. 818, 824 (1961); *People* v. *Fournier*, 77 P.R.R. 208, 243-244 (1954); *People* v. *Medina*, 72 P.R.R. 241 (1951); *People* v. *Otero*, 67 P.R.R. 376 (1947); *People* v. *Declet*, 65 P.R.R. 22 (1945), because when the prosecuting attorney sought to introduce the written confession as evidence, the presiding judge ordered the jury to withdraw, and in its absence he received evidence as to the circumstances under which the testimony was offered. The prosecuting attorney offered the testimony of a number of witnesses to establish the voluntariness of the confession; appellant relied solely on his own testimony. After the introduction of the evidence, the judge—in the absence of the jury—stated that since the evidence was contradictory, it was proper to submit the question to the triers of the facts. It was done immediately, except that before the jury only the testimonies offered by the witnesses for the State were reproduced, for the defendant abstained from testifying. Summing up, the only evidence before the jury, as we shall see, leads to the inevitable conclusion that the confessions offered were voluntary.

Said evidence was to the effect that while appellant was in the company of several persons in a coffee shop near the place of the events, he was asked by a policeman to accompany him, to which he consented; that they went to police headquarters in Yauco, where they stayed for about an hour and a half, until 7:30 p.m.; that then he was taken to Ponce, and from there to Yauco about 11:00 p.m.; that in Ponce he was questioned by Prosecuting Attorney Pérez Regis in the District Hospital; that on returning to Yauco he was given bread and cigarettes; that next day defendant ate breakfast and lunch; that he was again taken to Ponce; that when detective Mercedes Rivera informed him at police headquarters of said city that Mrs. Torres had died, defendant said: "If she died I am going to tell the truth," and immediately afterwards, he admitted he had struck her with

a stone, because the victim had insulted him when he attempted to collect some money which she owed him, but he denied he had raped her; that immediately he was taken to the office of the prosecuting attorney and there, after the legal warnings, he narrated the facts in a similar way on examination by Prosecuting Attorney Pérez Regis. By the testimony of the police officers who intervened at this stage of the investigation—Lieutenant Rafael Irizarry, policeman Rómulo Alvarado, and detective Mercedes Rivera—of the stenographers who witnessed the examination and of a newspaper reporter of El Imparcial who was in said prosecuting attorney's office, it was established that no violence, physical or psychological coercion, threats or promises were used at any time to obtain the confessions.

In the light of the foregoing, it clearly appears that both confessions were voluntary. There is a complete absence of the conditions necessary to support the illegality of the confessions offered because of their involuntariness. *People* v. *Amador*, (decided June 19, 1963); *People* v. *Martínez*, 86 P.R.R. 390 (1962); *People* v. *Ramos*, 84 P.R.R. 542 (1962); *People* v. *Pérez*, 84 P.R.R. 173 (1961); *People* v. *Meléndez*, 80 P.R.R. 759 (1958); *People* v. *Fournier*, 80 P.R.R. 376 (1958); *People* v. *Fournier*, 77 P.R.R. 208 (1954).

2. Contrary to the provisions of § 274 of the Code of Criminal Procedure then in force, 34 L.P.R.A. § 783, the trial court permitted the written confession offered by defendant to go to the jury.[1] In so doing it erred, *People* v. *Ramos*, *supra*, but pursuant to the ruling therein—affirmed in *People* v. *Cruz*, 87 P.R.R. 124 (1963) and *People* v. *Santos*, *supra*,—this action does not indefectibly entail the reversal of

---

[1] Rule 140 of Criminal Procedure of 1963 contains substantially identical provisions: "Upon retiring for deliberation, the jury may take with them all papers or objects that have been received as evidence, *except the depositions*." The term "depositions" used herein includes defendant's written confession. See discussion on this topic in *People* v. *Ramos*, *supra*.

the judgment, unless it is shown that the error committed was evidently prejudicial. In *Ramos* we pointed out that the fact that defendant had admitted orally to several persons the commission of the offense, according to the testimonies presented, cured the error committed because "the written confession could hardly remind the jury more than several testimonies offered at the trial by persons to whom defendant confessed the fact." And in *Cruz*, we considered that defendants did not introduce defense evidence and that the prosecution evidence on the facts was very simple and brief, and did not involve problem of conflict. In the present case we have examined the transcript of the evidence of the proceeding—which, incidentally, was held before we rendered our opinion in *Ramos*—and although it was lengthy, it was simple evidence, and for all purposes, incontrovertible, for the only witness presented by the defense limited himself to placing the defendant until noon in a place distant from the scene of the crime, when the offense occurred after 1:30 p.m. Furthermore, the written confession is an exact reproduction of the terms of the oral confession, which the jury received through the testimony of detective Rivera. Considering the facts as a whole, the error committed is not reversible on said grounds.

3. The incident which gave rise to the third assignment of error occurred as follows:

"Can you say whether you talked to him at any time?
Yes, sir.
What, if anything, did you tell him?

DEFENSE:
Objection. He should not say what the witness told defendant.

HON. JUDGE:
What this man told defendant is admitted.

DEFENSE:
Exception.

HON. JUDGE:

Is it your purpose to discuss any kind of reaction on the part of defendant?

PROSECUTING ATTORNEY:

Yes, Your Honor.

HON. JUDGE:

It is admitted.

.        .        .        .        .        .        .        .

PROSECUTING ATTORNEY:

At that time, did defendant tell you anything?

Yes, sir, he said these words to me, I am nicknamed Picante, he said: 'Picante, they are going to do me an injustice, I have not committed said crime and they say I struck Leticia, and I did not strike her. I went to buy three cents of bread for her, for she sent me to the store for bread every day.'

Had you already talked to Leticia?

Yes, sir.

Said statement was volunteered by him?

Yes, because he knows me. He saw me at that moment and told me those words.

And did you say anything to him?

Well, I did not say anything. He was walking around and he told me so, that he had not done it.

.        .        .        .        .        .        .        .

Did you, at any time mention to Raúl what you had talked with Leticia?

I told him.

Can you say what you told him in relation to this conversation?

DEFENSE:

Objection.

HON. JUDGE:

Strike out the part of the question relating to what he talked to somebody. Now, what he told him irrespective of the grounds is permitted.

DEFENSE:

Exception.

HON. JUDGE:

Take note of that.

PROSECUTING ATTORNEY:

What did you tell him?

Can I explain it as stated in my statement even if there are details?

HON. JUDGE:

You are going to tell the jury what you told defendant in the same words you said it as far as you can reproduce them. I told Raúl that Leticia had told me that he . . . .

PROSECUTING ATTORNEY:

What did you tell Raúl Couret Martínez at headquarters?

That I had been told that he had struck her eye with a stone and that he had uttered some words that he wanted to screw her and that there was a struggle and she defended herself to prevent anything happening. That was what I told him: that I had been told that she had defended herself against his attempt to rape her.

And what else?

Then he said 'I did not, I just went for the three cents of bread, which I do every day.' But he always insisted that he had not done it." (Tr. Ev. 166–167, 168, 169–170, 176–177.)

■ It is sought to apply to the preceding situation the decision in *People v. Álvarez*, 85 P.R.R. 569 (1962), but a slight examination will show that it does not apply. In *Álvarez* defendant did not react, he remained silent, on being charged with the commission of a crime, and this fact was interpreted as an admission by silence. In this case, contrary to *Álvarez*, defendant did not remain silent when he was charged with the offense, and, far from that, he denied it positively and gave his own version of his relations with the victim. There could be no violation of the constitutional right that the silence of defendant shall not be commented on.

The errors assigned were not committed and the judgment rendered by the Superior Court, Ponce Part, on February 24, 1958, will be affirmed.